UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALISA M., ) | |
| ) | |
| Plaintiff, ) | No. 20-cv-4362 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| KILILO KIJAKAZI, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Memorandum Opinion and Order**

Plaintiff Alisa M.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for child's insurance benefits and supplemental security income. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 18] is DENIED and Defendant's motion for summary judgment [dkt. 23] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

1.  **SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).
[2] "Plaintiff's Brief in Support of her Motion to Reverse the Decision of the Commissioner of Social Security" has been construed as a motion for summary judgment by the Court.

adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted).

**2.   BACKGROUND**

  **1.1   Procedural History**

In April 2017, Plaintiff filed a Title XVI application for supplemental security income. [Administrative Record ("R.") 17.] In May 2018, Plaintiff protectively filed an application for child's insurance benefits and a Title II application for disability insurance benefits. *Id*. Plaintiff alleges disability beginning March 20, 2017. *Id*. Plaintiff was born in 1996, making her 21 years, 8 months old on her alleged disability onset date. *Id*. Plaintiff's applications were denied initially and upon reconsideration. *Id*. Plaintiff appealed those denials and appeared at a June 27, 2019 Administrative Hearing before Administrative Law Judge ("ALJ") Deborah M. Giesen. [R. 43-107.] On July 25, 2019, ALJ Giesen issued an unfavorable decision, concluding that Plaintiff had not established she was disabled during the period from her onset date through the date of the ALJ's decision. [R. 17-35.] Plaintiff requested and was denied Appeals Council review [R. 1-3], rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on July 24, 2020, seeking review of the Commissioner's decision. [Dkt. 1.]

### 1.2  The ALJ's Decision

On July 25, 2019, the ALJ issued a careful and thorough decision, following the familiar five-step sequential process for determining disability. [R. 17-25.] Before Step 1, the ALJ noted Plaintiff had not attained age 22 prior to her alleged onset date. [R. 20.] At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id*. At Step 2, the ALJ found Plaintiff had the severe impairments of bipolar disorder, anxiety disorder, and attention deficit disorder. *Id*. The ALJ determined Plaintiff's obesity was a non-severe impairment. *Id*. At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 20-23.] Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the ability to understand, remember, and carry out simple instructions; the ability to respond appropriately to supervision, coworkers, and usual work situations; ability to deal with changes in a routine work setting; occasional interaction with coworkers and supervisors; no interaction with the public." [R. 23-33.] At Step 4, the ALJ noted Plaintiff had no past relevant work. [R. 33.] At Step 5, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. [R. 34-35.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act at any time prior to the date she turned 22 through the date of the ALJ's decision. [R. 35.]

### 3.  DISCUSSION

Plaintiff raises three issues with the ALJ's opinion: (1) that the ALJ erred in assessing Plaintiff's RFC; (2) that the ALJ erred in evaluating the medical opinion of Plaintiff's psychiatrist; and (3) that the ALJ inappropriately assessed Plaintiff's subjective statements.

### 3.1 The ALJ Properly Evaluated Plaintiff's RFC Under SSR 96-8P

Plaintiff alleges the ALJ failed to properly evaluate Plaintiff's residual functional capacity because she allegedly failed to account for Plaintiff's limitations in concentration, persistence, or pace. [Dkt. 18, p. 2.] The Court disagrees.

"[T]he determination of a claimant's RFC is a matter for the ALJ alone…to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). Under Social Security Ruling 96-8p, an ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence...and set forth a logical explanation of the effects of the symptoms…on the individual's ability to work." SSR 96-8p. Substantial evidence requires only that an ALJ's decision be adequately supported, which can occur even where another position is also supported. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

In her decision, the ALJ restricted Plaintiff to a full range of work with nonexertional limitations including the ability to understand, remember, and carry out simple instructions; the ability to respond appropriately to supervision, coworkers, and usual work situations; ability to deal with changes in a routine work setting; occasional interaction with coworkers and supervisors; no interaction with the public. [R. 23-33.] The ALJ cited substantial evidence in support of this RFC finding.

Specifically, the ALJ first observed that evidence showed a tumultuous relationship with Plaintiff's family that included a psychiatric hospitalization in August 2016 when Plaintiff was 20 years old. [R. 24-25 (referencing R. 414).] With treatment, Plaintiff showed improvement that continued throughout 2016 and 2017, though she remained frustrated about her parents' alleged attempts to control many aspects of her life. [R. 25 (referencing R. 423, 557, 573, 584).] The ALJ concluded that "[a]lthough significant emotional conflict with her parents is apparent, the claimant cited them as her main support, suggesting an intimate, albeit tumultuous relationship."] [R. 31.]

4

The ALJ also referenced the mixed findings and variable improvement during July 2018 to July 2019. In July 2018, Plaintiff reported taking two college courses and was looking for a part-time job. [R. 27 (referencing R. 646).] Mental status examinations around this time were largely unremarkable with full orientation, a cooperative attitude, anxious mood, goal-oriented thought processes, and intact memory. *Id*. (referencing R. 646, 649). However, Plaintiff reported to emergency services in August 2018 after an altercation with her mother, and was admitted for inpatient psychiatric treatment *Id*. (referencing R. 1436-39). Yet a month later at a September 2018 consultative psychological evaluation, Plaintiff was alert and fully oriented, showed an anxious mood, was cooperative and attentive, had normal speech and goal-directed thought processes, struggled with math calculations, and showed an intact fund of information, judgment, reasoning abilities and mostly intact memory *Id*. (referencing R. 627). Even later that month, Plaintiff reported a busy schedule with work and school, working as many as 36 hours at Starbucks while taking college courses. [R. 29 (referencing R. 921).] The ALJ noted more mixed findings in October 2018: Plaintiff alleged psychotic symptoms and hallucinations, yet examination was mostly within normal limits and her symptoms had stabilized with medications. *Id*. (referencing R. 956-57). The ALJ noted the similarly mixed findings in 2019: Plaintiff reported good grades in school and improved job prospects, but continued to struggle with family stressors. *Id*. (referencing R. 975, 1011). Plaintiff began living alone in March 2019 in a family-owned apartment after being evicted from the family home due to more conflicts. [R. 30 (referencing R. 1015).] Despite this, Plaintiff reportedly earned straight A's in her college courses and continued her work study program, and showed mostly normal mental examinations but with a sad mood and continued aggravation with her parents. *Id*. (referencing 1016, 1400).

Given these mixed findings, the ALJ looked to the medical opinion evidence to help her assess Plaintiff's abilities. State agency psychologists Joseph Mehr, Ph.D. and Steven Fritz, Psy.D.

5

each reviewed the record in July 2018 and December 2018, respectively, and opined that Plaintiff had no severe mental impairments. [R. 113, 142.] The ALJ acknowledged that such opinions were consistent with evidence showing overall intact concentration and memory on examinations, and Plaintiff's completion of college courses with good grades while living independently and working. [R. 32.] However, the ALJ labeled these opinions as not persuasive given the fact Plaintiff did show deficits, and the ALJ opted for a more limiting finding.[3] [R. 32-33.] On the other hand, because the record contained many unremarkable examination findings, and because Plaintiff obtained and work at several jobs in a part-time capacity while successfully completing some college courses, the ALJ found unsupported the opinion of treating psychiatrist Dr. Matins Adeoye, M.D., who opined that Plaintiff had marked difficulties in daily activities; extreme difficulties in social functioning, concentration, persistence or pace; extreme difficulties adapting and managing oneself; and that she would miss more than four days of work per month. [R. 33 (citing R. 1430).]

      Thus, the ALJ limited Plaintiff to simple tasks *and* responding appropriately in usual work situations, dealing with only changes in a routine work setting, occasional interaction with coworkers and supervisors, and no public interaction. The Court finds the ALJ's consideration of the evidence above to be reasonable, and the analysis and conclusions that flowed from the same were also reasonable. If Plaintiff felt there were missing RFC restrictions related to any difficulties in concentration, persistence, or pace, it was incumbent upon her to outline those missing restrictions and the medical reasoning behind the same. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). It is not enough for Plaintiff to have speculated that difficulties in concentration, persistence, or pace may have caused limitations "such as off-task time" with no cites to the record

---

[3]   Specifically, *inter alia*, the ALJ recognized that a robust schedule was sometimes overwhelming for Plaintiff and, accordingly, limited her to a far less strenuous RFC than suggested by the reviewing physicians. [R. 22.]

that any such limitations existed, were warranted, or were causally related.[4] [Dkt. 18, p. 3.] Because no court has held that moderate limitations in concentration, persistence or pace requires off-task time, this argument fails. *Capman v. Colvin*, 617 F.App'x 575, 579 (7th Cir. 2015) (a moderate limitation is not a complete impairment). Similarly, the ALJ was not required to reweigh the evidence as Plaintiff suggests. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (court may not "reweigh evidence"). Nor was the ALJ required to confront every piece of evidence. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("an ALJ need not discuss every piece of evidence in the record and is prohibited *only* from ignoring an entire line of evidence") (signals and citations omitted; cleaned up; emphasis added). Plaintiff's arguments related to the ALJ's RFC determination largely ask the Court to reweigh the evidence in an impermissible way, which the Court will not do.

In sum, the ALJ provided persuasive reasoning behind her RFC determination. The Court finds the ALJ's reasoning sound as to the restrictions and accommodations she included (and declined to include) within the RFC. Because substantial evidence supports the ALJ's residual functional capacity finding, the Court will not overturn the ALJ's decision on this basis.

### 3.2 The ALJ Adequately Assessed the Medical Opinion of Dr. Adeoye

Plaintiff next challenges the ALJ's assessment of the opinion of psychiatrist Martins Adeoye,

---

[4] No medical evidence supports Plaintiff's claims that her "impaired insight and judgement, listlessness and anergia, abnormal mood and affect, memory deficits, poor concentration, short attention span, and paranoid or aggressive thought content would have distracted her to the point where she would be off-task more than 15 percent of the workday, which would have precluded competitive work per the VE." [Dkt. 29, p. 3 (citing VE's testimony at R. 104).] While Plaintiff cites to various medical records that show these symptoms existed, Plaintiff has pointed to no evidence that any symptom, individually or collectively, would cause her to be off task for any amount of time. Similarly, Plaintiff has pointed to no evidence she would allegedly become argumentative in the workplace, causing her to be unemployable. [Dkt. 18, p. 6.] Rather, the Court finds reasonable the ALJ's interpretation of the evidence that "the record is truncated with psychiatric hospitalizations, often prompted by acute, extreme episodes of emotional conflict between the claimant and her parents. Yet, the record is devoid of any documented mental episodes while at work or school that resulted in emergency room visits or admissions. The record shows the claimant's reports of frustration due to her parents' refusal to relinquish control over basic aspects of her life." [R. 32.] It was reasonable for the ALJ to refuse to infer that Plaintiff's aggressive behavior in response to her parents' attempts to control her behavior translated to interactions with customers, coworkers, or supervisors.

M.D., but as the ALJ provided valid reasons for discounting the opinion, the Court will not overturn the ALJ's decision on this basis.

A holistic reading of the ALJ's opinion shows she carefully examined and considered the supportability and consistency factors ALJ's must address for opinions of this type. 20 C.F.R. § 404.1520c(b). The ALJ was not required to spell out her reasoning with a direct citation to the regulations and her reasoning for discounting Dr. Adeoye's opinion is clear; Dr. Adeoye's opinion was unsupported by his own notes, inconsistent with other evidence, and inconsistent with Plaintiff's activities. [R. 33.]

First, the ALJ noted that Dr. Adeoye did not accurately describe his treatment relationship with Plaintiff, writing that he saw her on a weekly basis when Plaintiff herself testified she saw Dr. Adeoye monthly. [R. 33 (*comparing* R. 1427 *with* R. 63).] Second, Dr. Adeoye's findings of severe psychosis and paranoia were contradicted by his examination findings, which were often unremarkable. *Id*. (*comparing* R. 1427 *with* R. 633, 636, 951, 954, 957, 1016). Third, while Dr. Adeoye indicated Plaintiff could not meet competitive standards in almost any work ability, his own treatment records reflected that Plaintiff earned straight-A grades and managed to do so while working part-time.[5] *Id*. (*comparing* R. 1429 *with* R. 1016). Finally, the ALJ took issue with Dr. Adeoye's finding that Plaintiff would miss work more than four days per month, when the record showed Plaintiff completed part-time work and that when she was fired it was not related to absenteeism.[6] *Id*. The Court finds the ALJ adequately explained how Dr. Adeoye's extreme

---

[5] The Court does not find the ALJ impermissibly extrapolated Plaintiff's part-time work into an ability to work full time. Rather, ALJ observed that Plaintiff's ability to work part-time undermined the most extreme restrictions found by Dr. Adeoye, which included that Plaintiff could not meet competitive standards in areas such as completing very short and simple instructions, working in coordination or proximity to others, asking simple questions, and being aware of normal hazards. [R. 1429.]

[6] The Court agrees with the Commissioner that a reasonable adjudicator could agree that being dismissed for theft is different than dismissal for a failure to meet competitive standards. [Dkt. 24, p. 10.] As Plaintiff has the burden here, *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011), yet fails to cite any evidence supporting her own allegation that theft was a symptom of her impairments, her argument is unconvincing. (Contrary to Plaintiff's

8

limitations lacked the supportability and consistency with the rest of the record.

Again, the ALJ is not required to confront every piece of evidence. *Deborah M.*, 994 F.3d at 788. In fact, similar to above, the Plaintiff fails to cite to a specific line of evidence the ALJ ignored, instead asking the Court to reweigh the evidence, which it will not do. To the extent Plaintiff alleges error because the ALJ did not have Plaintiff's school or employment records to support her finding that the record did not reflect frequent absenteeism [dkt. 18, p. 10; dkt. 29, p. 11], it was incumbent upon Plaintiff to submit such evidence, which she did not do. The Court does not find error in the ALJ's disregard of Plaintiff's testimony about feeling "overwhelmed" when overscheduled, or the single medical reference to absenteeism[7] when assessing Dr. Adeoye's opinions. The Court finds the ALJ appropriately considered and addressed the most compelling findings in the record, and noted whether they synced with Dr. Adeoye's opinions; the Court does not find this to be a case where the ALJ ignored an entire line of evidence contrary to her conclusion. *Gedatus*, 994 F.3d at 900.

The Court finds the reasons detailed above are good reasons supported by the record for discounting the opinions of Dr. Adeoye, and Plaintiff has not demonstrated that the ALJ's rationale was patently erroneous. Because the Court finds no error with the ALJ's assessment of these opinions, the Court will not remand on this basis.

### 4.3 The ALJ Appropriately Assessed Plaintiff's Subjective Statements

Plaintiff also complains the ALJ failed to properly evaluate Plaintiff's subjective

---

assertion, her citations to "evidence of abnormal mental impairments" fails to causally connect theft to any such impairment. [Dkt. 29, p. 10].)

[7] The single record citation Plaintiff provides that supports an absence instead of a general reference to "feeling overwhelmed" [*see* dkt. 29, p. 11] actually demonstrates Plaintiff's ability to effectively cope with an overwhelming schedule, as well as interact appropriately with supervisors when confronted with challenges. Specifically, the record reflects that Plaintiff missed one day of group outpatient therapy due to school obligations (it seems this was an explained absence rather than a no call/no show situation). [R. 921.] The record then states Plaintiff "called off [work] at least one time this week due to school work. [Plaintiff] states she informed her job she only wanted to work 25 hours per week at the most, but they scheduled her for 36. She notes that she spoke to her supervisor and her schedule was correct beginning next week." *Id*.

9

statements. The Court disagrees.

An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

The ALJ provided multiple valid reasons for discounting Plaintiff's allegations. First, the ALJ observed that Plaintiff attended college-level courses and maintained good grades in those courses, including reporting at one point that she received straight-A grades. [R. 30 (referencing R. 1016).] Second, the ALJ pointed out that not only did Plaintiff successfully complete such courses, but that she often worked 25 hours at part-time jobs while doing so. [R. 31 (referencing R. 921).] The ALJ also noted that Plaintiff responsibly talked with her supervisor to reduce her hours when she felt her schedule was overwhelming or when work conflicted with her schooling. [R. 33; *see, also,* fn. 6, *supra*.] Third, the ALJ pointed to continuous improvement with treatment throughout the record.[8] [R. 28 (referencing R. 423, 573, 584, 1011); *see* SSR 16-03p (instructing ALJ's to take note of improvement in claimant's conditions).] Fourth, the ALJ also discussed the many normal and underwhelming mental status examination findings of record, often showing intact memory and normal thought processes. [R. 27 (referencing R. 627, 646, 649).] And fifth, the ALJ pointed out that Plaintiff's symptoms often exacerbated only when she missed appointments or did not follow treatment recommendations. [R. 25 (referencing R. 414, 463); *Patricia T. v. Saul*, 2020 WL 2767580, at *4 (N.D. Ill. May 28, 2020) (ALJ built a logical bridge

---

[8] Plaintiff claims the ALJ made a mistake of fact when she said Plaintiff did not engage in therapy until after her alleged onset date. [Dkt. 18., p. 12 (referencing R. 31).] However, this amounts to nothing beyond a harmless scrivener's error, as the ALJ spent nearly three pages detailing Plaintiff's mental health treatment prior to the relevant period. [R. 24-27.] Plaintiff has not and cannot established this error as harmful.

by pointing to evidence that symptoms improved with therapy and medication).] Still, the ALJ largely credited many of Plaintiff's allegations, acknowledged Plaintiff's family difficulties, and arrived at an RFC finding that went further than the majority of doctors of record.

In sum, the ALJ's discussion of the evidence adequately highlighted the ways in which Plaintiff's assertions varied from the evidence. The ALJ's assessment of Plaintiff's symptoms and accompanying reasoning is well-supported and adequate to support the resulting conclusions (*i.e.*, supported by substantial evidence). *Barnett*, 381 F.3d at 668. The Court is sufficiently able to assess how the ALJ evaluated Plaintiff's symptoms, as required by SSR 16-3p. Moreover, Plaintiff has not demonstrated the ALJ's observations were wrong or that they lacked any explanation or support. *Elder*, 529 F.3d at 413-14. Accordingly, the Court finds the ALJ reasonably evaluated Plaintiff's subjective symptoms; the Court declines to remand on this basis.

**4.    CONCLUSION**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence and contain the requisite adequate logical bridges between the evidence and her conclusion. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [dkt. 18] is DENIED and Defendant's motion for summary judgment [dkt. 23] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: APRIL 13, 2022**

_____
Susan E. Cox,
United States Magistrate Judge